UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **TRAVELERS PROPERTY** | : | Civil Action No. 04-1446 (JJH) |
| **CASUALTY OF AMERICA,** | : | |
| *as Subrogee of the Estate of* | : | |
| *Irving Goldman* | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | **M E M O R A N D U M** |
| | : | **O P I N I O N** |
| **PAVILION DRY CLEANERS, et al.,** | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

**HUGHES, U.S.M.J.**

This matter comes before the Court on Plaintiff's, Travelers Property Casualty Company of America, as Subrogee of the Estate of Irving Goldman ("Plaintiff"), Motion for Sanctions for Defendants', Pavilion Dry Cleaners, John In and Hannah In, Jointly and Severally, d/b/a Pavilion Dry Cleaners ("Defendants"), alleged spoliation of evidence [Docket Entry No. 14], returnable May 16, 2005. Defendants oppose the Motion. The Court has reviewed the written submissions of the parties and considered the matter pursuant to Federal Rule of Civil Procedure Rule 78. For the reasons that follow, Plaintiff's motion for sanctions is denied in part and denied without prejudice in part.

**I.     BACKGROUND AND PROCEDURAL HISTORY**

The underlying matter arises out of Plaintiff's subrogation action to recover damages sustained during a July 4, 2001 fire which originated within a shopping center, known as the "Pavilion," in Brick, New Jersey. Plaintiff is the insurer of the estate of Irving Goldman, the shopping center's owner. Pl.['s] Br. at 9. Defendants rented space within the shopping center

and operated a dry cleaning establishment, the "Pavilion Dry Cleaners." *Id.*

Plaintiff alleged that the fire was caused by a malfunction within the sign outside Defendants' establishment. *Id.* Furthermore, Plaintiff argues that Defendants were responsible for the repair and maintenance of the sign and that the fire was caused by Defendants' failure to maintain it. *Id.*

The fire was investigated by Brick Township fire inspector, Bruce Clayton, who concluded that it originated from the "front mansard above the Pavilion Dry Cleaners" but recommended that "a more complete examination of the electric lighting system of [the] building [be conducted] to determine [its] exact cause and origin. Defs.['] Br., Ex. B; *see also* Def's['] Br., Ex. A, *Bruce Clayton dep.*, N.T. 38, L. 4-12.

    **A.**    **Plaintiff's Motion for Sanctions Based on Defendants' Spoliation of Evidence.**

Plaintiff contends that after it notified Defendants of its pursuit of subrogation and of its intent to inspect the sign, Plaintiff was informed by Defendants' representative, Joseph Argabright, that "he would be securing the sign so that all interested parties could inspect [it]." Pl.['s] Br. at 10. Plaintiff further argues that it relied on Mr. Argabright's assurance and, thus, did not take further action to secure the sign. *Id.* Mr. Argabright did not secure the sign, however, and it is now missing. *Id.*

Plaintiff submits this motion for sanctions alleging that it has "been severely prejudiced due to the spoliation of [the] evidence." *Id.* Plaintiff argues that, without the sign, they are unable to prove the cause of the fire and, consequently, establish Defendants' negligence. *Id.* While Plaintiff is careful not to allege intentional alteration or destruction, Plaintiff argues that the sign is now missing because Defendants' representative failed to secure it, despite his prior

2

representations that he would do so. *Id.* at 12.  Plaintiff submits that the sign "is the most crucial piece of evidence, and is readily apparent that the sign was discoverable." *Id.*  Plaintiff requests that sanctions be imposed and, specifically, that "the jury be informed that due to the spoliation inference, the jury must find that the fire was caused by the [D]efendant[s'] failure to maintain the subject sign." Pl.['s] Br. at 5.  Lastly, Plaintiff contends that there are no lesser sanctions that "could avoid substantial unfairness to the opposing party than what the plaintiff is requesting." Id. at 12.

### B. Defendants' Opposition to the Motion

Defendants deny any responsibility for the loss of the sign and further deny that Mr. Argabright was Defendants' representative.  Defs.['] Br. at 8.  Rather, Defendants submit that Mr. Argabright was a local insurance adjuster who was retained by National Fire and Indemnity Exchange ("NIE") on Defendants' claim for coverage under Defendants' insurance policy from NIE.  Defs.['] Reply Br. at 1-2.  Defendants argue that Plaintiff has not offered any evidence to establish that Mr. Argabright had actual or apparent authority to make representations for them.  Defs.['] Br. at 4.

Defendants also refer to the testimony of fire inspector Bruce Clayton indicating that the sign was turned over to Plaintiff's on-site representative, Paramount Realty, who had assumed responsibility for the shopping center at the time of the fire.  *Id.; see also Clayton dep.* N.T. 26-27, L21-18; N.T. 32-35, L8-8.  They further refer to Mr. Clayton's testimony wherein "he observed the sign in a sprinkler system utility room at the [P]laintiff's shopping center well after the fire." Defs.['] Br. at 5.  They contend that the utility room was within Plaintiff's exclusive possession and control at all times relevant to this matter. *Id.*

In addition, Defendants argue that "[P]laintiff fail[ed] to establish that [D]efendants ever had possession or control of the sign." *Id.* They submit that Mr. Argabright's statement that "he would secure the sign can not be reasonably construed as asserting actual control over the sign when there is no evidence of a chain of custody showing the sign ever left the [P]laintiff's control." *Id.* Lastly, Defendants argue that the evidence only shows that it was the Plaintiff, and not the Defendants, who maintained control of the sign prior to it being missing. *Id.* at 8. Thus, Defendants assert that sanctions are not warranted in this case where there is no evidence to establish their responsibility for the loss of the sign. *Id.*

## II. DISCUSSION

Spoliation is "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Mosaid Technologies, Inc. v. Samsung Electronics Co., LTD.*, 348 F. Supp. 2d 332, 335 (D.N.J. 2004). A showing of spoliation may give rise to sanctions, which could include the following: "dismissal of a claim or granting judgment in favor of a prejudiced party; suppression of evidence; an adverse inference, referred to as the spoliation inference; fines; attorneys' fees and costs." *Id. (footnotes omitted).*

This Court has the authority to impose sanctions under the Federal Rules of Civil Procedure and its inherent power to control litigation. *Scott v. IBM Corporation*, 196 F.R.D. 233, 247-248 (D.N.J. 2000). Although this Court has broad discretion in imposing the proper sanctions for spoliation, "[t]he sanction should be designed to [d]eter parties from engaging in spoliation; [p]lace the risk of an erroneous judgment on the party who wrongfully created the risk; and [r]estore the prejudiced party to the same position he would have been in absent the

wrongful destruction of evidence by the opposing party." *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999).

Dismissal of a claim or suppression of evidence are "the two most drastic sanctions because they strike at the core of the underlying lawsuit." *Mosaid Technologies, Inc.*, 348 F. Supp. 2d at 335.  Dismissal is an appropriate sanction if there is evidence of "willfulness, bad faith, or fault [by] the sanctioned party." *West,* 167 F.3d at 779.  However, because it is a drastic remedy, dismissal should be imposed only in extraordinary circumstances, usually after less drastic sanctions are considered. *Id.*

In *Schmid*, the Third Circuit discussed three essential elements that determine whether such extreme sanctions are warranted:

> "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future."

*Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3d Cir. 1994) (reversing the district court's judgment of dismissal of plaintiff's claim and preclusion of expert evidence as sanctions for spoliation of evidence, reasoning that the sanctions were not commensurate with the limited fault of plaintiff's expert witness to properly document his investigation and the resulting insubstantial prejudice to the defendant).  Before the degree of fault and any resultant prejudice requiring sanctions can be determined, however, the party's fault need to be first established. *Parkinson v. Guidant Corp.*, 315 F. Supp. 2d 760, 762 (W.D. Pa. 2004) (holding that sanctions against defendants were not warranted because evidence was not sufficient to establish that

defendants, rather than plaintiff or his representative, were responsible for the loss of the evidence).

A less serious sanction that may be imposed is the *spoliation inference.  Mosaid Technologies, Inc.*, 348 F. Supp. 2d at 335.  Jury instructions permitting the spoliation inference allows the jury to infer that the "destroyed evidence might or would have been unfavorable to the position of the offending party." *Id.* at 336 (*quoting Scott*, 196 F.R.D. at 248).  In determining whether the spoliation inference applies, four factors must be satisfied:

> "[f]irst, it is essential that the evidence in question be within the party's control;  [s]econd, it must appear that there has been actual suppression or withholding of the evidence;  [t]hird, the evidence destroyed or withheld was relevant to the claims or defenses; [a]nd fourth, it was reasonably foreseeable that the evidence would later be discoverable."

*Mosaid Technologies, Inc.*, 348 F. Supp. 2d at 336.  Such adverse inference does not arise, however, "when the circumstances indicate that the documents or article in question has been lost or accidentally destroyed, or where the failure to produce it is otherwise properly accounted for."  *Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 334 (3d Cir. 1995).

Lastly, monetary sanctions like fines, attorneys' fees and costs may also be imposed for spoliation of evidence.  They may be appropriate to punish the offending party for its actions or to deter litigant's conduct, sending the message that egregious conduct will not be tolerated. *U.S. v. Philip Morris USA, Inc.*, 327 F. Supp. 2d 21, 26 (D.D.C. 2004) (imposing monetary fines and costs for defendants' failure to preserve relevant electronic mail despite a court order to the contrary, reasoning that the amount of sanctions "fully reflect the reckless disregard and gross indifference displayed by [defendants] toward their discovery and documentation preservation obligations."); *In Re: Prudential Insurance Co. of Am. Sales Practices Litig.*, 169 F.R.D. 598,

6

615-617 (D.N.J. 1997) (imposing court fines and plaintiff's fees and costs for defendant corporation's consistent pattern of document destruction, reasoning that the monetary sanction "informs the [defendant] and the public of the gravity of the repeated incidents of document destruction and the need of the Court to preserve and protect its jurisdiction and the integrity of the proceedings before it").

### III.   ANALYSIS

Plaintiff requests that sanctions be imposed and, specifically, that "the jury be informed that due to the spoliation inference, the jury must find that the fire was caused by the defendant's failure to maintain the subject sign." Pl.[s] Br. at 5.  Although Plaintiff seeks jury instructions which leads one to conclude that he is seeking a "spoliation inference," Plaintiff is in essence asking for a directed verdict.  Because there is no showing of intentional destruction of evidence nor bad faith in Defendants' conduct, and because lesser sanctions are available, the Court will deny this proposed drastic sanction.  Furthermore, following the analysis set forth in *Schmid*, although it appears Plaintiff suffers prejudice due to the sign's disappearance, there remains a material factual dispute regarding Defendants' fault in its disappearance.  *See Schmid*, 13 F.3d at 79.  As the court noted in *Parkinson*, Defendants' fault needs to be first established before their degree of fault and any resultant prejudice may be determined.  315 F. Supp. 2d at 762.  Here, Plaintiff failed to establish that Defendants ever had possession or control of the sign, let alone responsibility for its disappearance.  Although Plaintiff contends that Mr. Argabright promised to secure the sign, it is uncertain whether he had authority to speak on behalf of the Defendants since it is disputed that he represented them.  Furthermore, fire inspector Bruce Clayton's testimony indicates that the sign in question was turned over to the Plaintiff or his representative and remained in his control well after the time of the fire.  *Clayton dep.* N.T. 26-27, L21-18;

N.T. 32-35, L.8-8.  Lastly, no evidence was presented to indicate that the sign ever left Plaintiff's control.

Accordingly, in so far as Plaintiff's motion seeks a "spoliation inference" which permits the jury to infer that the destroyed evidence would have been unfavorable to the position of the offending party, the Court denies this proposed sanction <u>without</u> prejudice.  Following the analysis set forth in *Mosaid Technologies*, Plaintiff, so far, has failed to establish that the sign was within Defendants' control.  *See Mosaid Technologies, Inc.,* 348 F. Supp. 2d at 336.   The Court finds that there remains a material factual dispute regarding Defendants' control of the sign, since the evidence indicates that Plaintiff may have maintained control of the sign well after the fire.  In addition, there appears to be inconclusive evidence that Defendants ever had control of the sign.  Furthermore, Plaintiff does not allege, nor was evidence presented, that Defendants intentionally altered or destroyed the sign.  Thus, the resolution of this issue needs to await further factual development at trial.  Depending on the evidence presented at trial, either party may then submit a jury instruction asking that a "spoliation inference" be given to the jury should the evidence so permit.  In addition, depending on the particular proof adduced at trial, each side is free to submit specifically tailored "spoliation inference" jury instructions.

Finally, because the Plaintiff does not seek suppression of evidence nor monetary sanctions as sanctions, the Court will not address those issues at this time.

## IV.     CONCLUSION

For the reasons set forth herein, Plaintiff's Motion for sanctions is denied in part and denied without prejudice in part.  Specifically, the Court finds that there exists a material factual dispute as to Defendants' possession and control of the sign in question and their responsibility for its loss.  Accordingly, directing judgment for Plaintiff as a sanction is unwarranted.  With

regard to Plaintiff's Motion as it applies to the "spoliation inference," the Court finds that either party is free to renew at trial the request for an adverse inference by way of submission of tailored jury instructions should further evidence support it.

      An appropriate Order accompanies this Memorandum Opinion.


Dated:        June 7, 2005.